Shared Cooper LLC v Callejas (2026 NY Slip Op 50054(U))

[*1]

Shared Cooper LLC v Callejas

2026 NY Slip Op 50054(U)

Decided on January 20, 2026

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 20, 2026
Civil Court of the City of New York, New York County

Shared Cooper LLC, Petitioner,

againstLucas Callejas and ROSA RAMOS, Respondents.

Index No. 309058/2025

For Petitioner: Allison FurmanFor Respondent: Lucas Callejas (pro se)

Jack Stoller, J.

Shared Cooper LLC, the petitioner in this proceeding ("Petitioner"), commenced this summary proceeding against Lucas Callejas ("Respondent"), a respondent in this proceeding, and Rosa Ramos ("Co-Respondent"), another respondent in this proceeding (collectively, "Respondents"), seeking possession of 11 Cooper Street, Apt. 5B, New York, New York ("the subject premises") on a purported good cause of failure to pay rent. Respondent, who was pro se, interposed an answer with a general denial and a defense that Petitioner accepted his rent after a lease expired. Co-Respondent did not answer or appear. The Court held a trial of this matter on December 22, 2025 together with an inquest against Co-Respondent.
The trial recordThe petition pleaded that the subject premises is not subject to the Rent Stabilization Law as it is in a building built in 2020 and that the subject premises is subject to Article 6-A of the Real Property Law, commonly known as the "Good Cause Eviction Law."
Petitioner proved that it is a proper party to commence this proceeding; that Petitioner is in compliance with the registration requirements of MDL §325; and that there was a landlord/tenant relationship between the parties.
Jesenia Lopez ("Property Manager") testified that the building in which the subject premises is located was built in 2020.
Petitioner submitted into evidence a one-year lease commencing September 1, 2021 with a monthly rent of $2,500 and a one-year lease commencing October 1, 2022 with a monthly rent of $2,500.
Petitioner caused a predicate notice to be served on Respondent on January 28, 2025 that [*2]purported to terminate his tenancy as of April 30, 2025. Petitioner annexed a rent breakdown through April 7, 2025 to the petition.
The rent breakdown shows that Respondents paid rent of October of 2022 on October 3, 2022, November of 2022 on November 1, 2022, December of 2022 and January of 2023 on January 24, 2023, February and March of 2023 on May 3, 2023, April, May, and June of 2023 on June 21, 2023, July of 2023 on July 5, 2023, and August and September of 2023 on September 1, 2023. 
The breakdown shows that Petitioner started billing Respondents at a rate of $2,600 as of October of 2023. The breakdown shows that Respondents paid rent for October and November of 2023 on November 1, 2023, December of 2023 on December 1, 2023, January of 2024 on January 2, 2024, February of 2024 on February 1, 2024, March of 2024 on March 2, 2024, April of 2024 on April 1, 2024, May and June of 2024 on June 18, 2024, July and August of 2024 on August 20, 2024, September, October, and November of 2024 on September 20, 2024 (in advance), December of 2024 and January of 2025 on January 27, 2025, February of 2025 on February 7, 2025, and March and April of 2025 on April 7, 2025. In addition to that, the breakdown reflects that Respondent made electronic payments that were reversed at times.
Property Manager testified on cross-examination that there was an extension of the lease through April.
Respondent testified that he and his family have been planning to leave the subject premises for some time; that he has been self-employed; that they downsized to the subject premises after having also rented another apartment in the building; that in March of 2025 he started a new job; that it hasn't worked out well; and that he plans on leaving New York.
DiscussionRespondent did not rebut Property Manager's testimony that the subject building was constructed in 2020. Accordingly, the subject building would not be subject to the Rent Stabilization Law, 9 N.Y.C.R.R. §2520.11(e), and a holdover predicated on a termination of a month-to-month tenancy need not state cause as outlined in Part 2524 of Title 9 of the New York Code of Rules and Regulations. As Petitioner pled that RPL §216, i.e., the Good Cause Eviction Law, applies to the subject premises, Petitioner can only prevail if it proves good cause. The good cause contemplated by the statute and pled in the petition is that Respondents "failed to pay rent due and owing" as per RPL §216(1)(a)(i).
The rent breakdown admitted into evidence established that Respondents did not always tender rent in the month it was due. However, the same breakdown demonstrated that Respondents consistently cured any arrears, at times paid rent in advance, and never fell behind more than three months. Significantly, Respondents were fully current as of January 27, 2025, one day before service of the predicate notice.
RPL § 216(1)(a)(i) does not define "failure to pay." If a failure to pay rent just means the existence of rent arrears, 1719 Gates LLC v. Torres, 85 Misc 3d 906 (Civ. Ct. Queens Co. 2024), then Petitioner has failed to meet its burden.
The application of "good cause" in analogous contexts, particularly holdover proceedings commenced by Housing Development Fund Corporations ("HDFCs"), is instructive to this point. Even though HDFCs are not rent-regulated, they may not terminate tenancies without cause, like tenancies subject to the Good Cause Eviction Law. 512 E. 11th St. HDFC v. Grimmet, 181 AD2d 488, 489 (1st Dept. 1992), 162-68 Lenox Ave. Hous. Dev. Fund Corp. v. Stovall, 84 Misc 3d 1267(A)(Civ. Ct. NY Co. 2025). Nonpayment of rent constitutes good cause for an HDFC to [*3]terminate a tenancy, 1103 Franklin Ave. HDFC v. Gould, 63 Misc 3d 1235(A)(Civ. Ct. NY Co. 2019), 207-213 W. 144th St. HDFC v. Jenkins, 44 Misc 3d 1224(A)(Civ. Ct. NY Co. 2014), which occasions consideration of factors such as prejudice, the amount of arrears when the proceeding was commenced, the tenant's overall rental history, and the nature and duration of the tenancy. See, e.g. 450-454 W. 152nd St. HDFC v. Stembridge, 38 Misc 3d 141(A)(App. Term, 1st Dept. 2013)(prolonged failure to tender rent was a factor in finding the establishment of good cause), 207-213 W. 144th St. HDFC, supra, 44 Misc 3d at 1224(A)(substantial arrears that characterized a tenancy combined with the prejudice suffered by a provider of low-income housing weighed in favor of a finding of good cause).
"[S]ome evidence" of a tenant's "problems" paying rent, by contrast, does not show that a tenant's nonpayment reached the level of good cause to terminate the tenancy, particularly in the absence of documentation of hardship incurred by a landlord by such "problems" paying rent. 92 St. Nicholas Ave. HDFC v. Rasheed, 46 Misc 3d 1211(A)(Civ. Ct., NY Co. 2015). While Respondent's rent payment history was inconsistent, nothing in the rent breakdown showed the kind of persistent failure to pay rent evinced in 450-454 W. 152nd St. HDFC, supra, 38 Misc 3d at 141(A). In the absence of such an obvious delinquent pattern here and prejudice therefrom, Petitioner has failed to meet its burden that it has good cause to terminate Respondent's tenancy.
Accordingly, it is hereby ORDERED that the petition is dismissed with prejudice.
This constitutes the decision and order of this court.
Dated: January 20, 2026New York, New YorkHON. JACK STOLLER, J.H.C.